## In the United States District court
## Southern district of New York

Emmanuel Obiagwu.

      Plaintiff

V.

State of New York,
Metropolitan Transportation Authority
Metropolitan Transportation Authority Police Department,           **JURY TRIAL DEMANDED**
Bradshaw 492 (in his individual and official capacity),
Galligan 3060  (in his individual and official capacity),
Tapia 3319  (in his individual and official capacity),
Demczuk 2529 (in his individual and official capacity)
Moretti 3157 (in his individual and official capacity)
Martinez 3295 (in his individual and official capacity)
Ragione 29579 (in his individual and official capacity)
Decker 2638 (in his individual and official capacity)
Culver 3310 (in his individual and official capacity)
Smahaj 3451 (in his individual and official capacity)
Ryan3449  (in his individual and official capacity)
Ajbury (in his individual and official capacity)
G/C-ardowski 538 (in his individual and official capacity)
Lt.Martinez 92 (in his individual capacity)
Captain Propisnoy (in his individual and official capacity)

      Defendants.

### COMPLAINT

### <u>JURY</u>
Plaintiff demands a trial by jury

### <u>INTRODUCTION</u>

1. Plaintiff Obiagwu is a law abiding civilian with no convictions and was not initially known to the defendants or in the location of the incident.

2. Obiagwu was engaged in first amendment protected activity when assaulted by defendant officers and eventually handcuffed and arrested.

3. It is a direct result that Obiagwu's action in seeking redress of grievances over excessive force and police discourtesy resulted in his arrest.

4. Due to lack of any danger or threat, Defendants's use of excessive force on Obiagwu is unconstitutional.

5. Obiagwu was dragged, shoved and intentionally tripped prior to being detained or arrested

6. Obiagwu was arrested multiple times in retaliation.

## **PARTIES**:

7. Plaintiff Emmanuel Obiagwu (hereinafter "Obiagwu") is a citizen of the state of New Jersey and the United States of America.

8. Defendant New York State (hereinafter "New york" or "the state" or "NYS")

9. Defendant Metropolitan transportation authority (hereinafter "MTA") is a department under jurisdiction and control of New York State operation in New York City.

10. Defendant Metropolitan transportation authority police department (hereinafter "MTAPD") is a department within New York State acting under color of law.

11. Defendant Bradshaw is a police sergeant for the MTAPD acting under color of law. He is sued in his individual and official capacity

12. Defendant Galligan is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

13. Tapia is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

14. Moretti is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

15. Martinez is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

16. Smahaj is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

17. Ajbury is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

18. Ryan is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

19. G/C-ardowski (#538) is a police officer for the MTAPD acting under color of law, He is sued in his individual and official capacity.

20. Propisnoy (hereinafter "propisnoy" or "Captain") is a police captain for the MTAPD acting under color of law, He is sued in his individual and official capacity.


## JURISDICTION AND VENUE

21. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1343

22. This Court has supplemental jurisdiction over the following state law claim pursuant to 28 U.S.C. §1367 in relation to the federal claims that it forms part of the same case under Article III of the U.S. Constitution.

23. This venue is proper in this District under 28 U.S.C. § 1391(b)(2). All of the events giving rise to this Complaint occurred within this District.

24. At all times relevant hereto, Defendants; Brasdshaw, Galligan, Tapia, Moretti, Martinez are citizens of the United States and resident of the State of NewYork and were acting under color of state law in their capacity as law enforcement officers within the state of New York.

## **FACTUAL BACKGROUND.**

25. On the morning of October 5, 2023 approximately 8:55 am Obiagwu was sitting on a waiting bench in 34th street station on the 2 & 3 train line in Manhattan New York.

26. Obiagwu was waiting for a train when he was approached by officers Tapia, Martinez, Moretti and Galligan and told to exit the station for no apparent reason.

27. Obiagwu was told if he doesn't leave the station he would be arrested because they don't like him there.

28. Obiagwu in disbelief questioned and asked "why are your bodycams not on and blinking?" Further demanding the defendants get their supervisor which they refused.

29. The defendants refused to turn on their bodycams as they got extremely close to obiagwu while giving orders.

30. Obiagwu was surrounded with the officers extremely closely giving the impression he was being detained by show of authority and no room to leave or move around freely.

31. After over 11 minutes of  Obiagwu being in fear repeatedly asking why their cameras aren't on or supervisor being called after request.

32. Obiagwu in fear of violence by the officers as they got  more agitated and louder decided to pull out his phone and begin recording.

33. Only after officers saw Obiagwu begin video recording did they give each other signal and finally turned on their bodycam after over 12 minutes of unrecorded encounter.

34.  Officer Tapia then stated "you're being ordered to leave the station"

35. Prior to being approached by the defendants, Obiagwu noticed and watched the defendants approach multiple black people including John Doe (a black man) who was forced by the defendants to get on a train that wasn't his train. John Doe was threatened with arrest if he didn't get on the train picked By the officers which was going to a different destination.

36. No one of European or Hispanic descendant sitting or standing at the station were confronted by the officers.

37. Approximately 90 seconds after Officers ordered Obiagwu to leave the station because he's "not allowed to be here" he  was physically grabbed and stripped from the bench to the ground and dragged on dirty subway grounds almost being thrown down the stairs by 4 male officers.

38. Defendant Galligan intentionally kicked Obiagwu's backpack which contained high value items.

39. Tapia would state "We gotta eject him all the way out of penn station" insinuating that Obiagwu must not only be denied access to MTA subway but to all transportation services including New jersey transit and Amtrak  which are outside the jurisdiction of the MTA police.

40.   Obiagwu was never in penn station until he was dragged outside the MTA 34th street station and into penn station by the officers where he is supposed to then be released as it is outside the bounds of the MTA subway but the officers refused to release him and insisted that he will not be allowed to use any form of transportation in penn station which is an entirely different facility from where was Obiagwu was initially apprehended.

41. Obiagwu noticing he isn't being allowed any form of transportation requested to make a complaint and officer refused then obiagwu attempted walking in the direction of the MTAPD command to make a complaint as he was being dragged past it and officer Tapia immediately countered obiagwu's attempt by applying extreme force on Obiagwu's left shoulder and locking it in a military style takedown move to control his entire body by applying pain to his injured shoulder. This move is what is used on high level fugitives such as terrorists and MS-13 prisoners in El-Salvador's CECOT prison.

42. It is to be noted that defendant Tapia and all officers were aware that Obiagwu complained about his shoulder. It is also to be noted that at this time Obiagwu wasn't under arrest or facing any charges or summons while being put in extreme pain and publicly humiliated in front of hundreds of eyes and cellphones like a MS-13 rapist / gang member.

43. Obiagwu was treated and escorted not only through the MTA system but also through Penn station on public display like a mass murderer because he attempted to make a complaint on the officers for harassment and racial profiling. Officers could have have used an MTA exit to eject Obiagwu but chose

a long route to humiliate him with over 8 officers similar to how alleged serial killer and terrorist Luigi Mangione was paraded for all to see with extended walking distance.

44. Obiagwu was bleeding at this point and no officer attempted to provide medical assistance or call EMS.

45. Defendant Tapia would state "you have no right to be here" while refusing Obiagwu from going to make a complaint

46. Defendant Tapia shoved Obiagwu onto an upward moving escalator and repeatedly kicked him then stood over him.

47. While outside post forced ejection Obiagwu was informed he must leave and not come back unless he would be arrested; this indicates Obiagwu was free to go as he was outside and no longer detained.

48. Obiagwu asked to speak to a supervisor informing he wanted to address his grievances regarding being physical hurt and assaulted by Tapia and other officers.

49. Mr Obiagwu's request to make a complaint would be challenged as officers showed no interest and acted dismissive towards his claims.

50. Obiagwu spotted the stripes on an officer who was later identified to be Bradshaw and directed his complaint towards him and as a direct response to Obiagwu asking Bradshaw to take his complaint Obiagwu was ordered under arrest and to be charged. Bradshaw directed the officers to arrest and charge Obiagwu since he wanted to make complaints. Note that Obiagwu was free of detainments at this moment after being released outside the facility.

51. Obiagwu was maliciously charged with 4 offenses including obstruction simply for asking to make a complaint.

52. The following day on October 6, 2023 Obiagwu requested the bodycam footage and it has never been released till the day of writing this on May 2, 2025.

53. Defendant MTAPD refused to release all documents requested by Obiagwu violating both federal and state laws.

54. **One night** approximately 11:45 PM Obiagwu was in a bathroom stall when he noticed an undercover MTA police recording him as use the toilet by putting an iPhone camera above the stall Obiagwu was in. Obiagwu immediately responded by saying he would report the incident to his police command.

55. The Undercover MTA police began chasing Obiagwu from the bathroom to the Moynihan train hall where Obiagwu made 3 right turns to confirm he was being followed. Obiagwu started walking faster and the undercover quickly stopped and reached into his bag in a aggressive manner that indicated he was pulling out a weapon.

56. As soon as Obiagwu noticed the undercover reach into his bag he ran through the the train platform connecting to Penn station as he called 911. Upon reaching penn station 911 dispatchers transferred the call to MTA police who Obiagwu reported the incident to. About 6 unidentified officers and a k-9 dog would escort Obiagwu to go find and arrest the man recording. Officers informed Obiagwu to stay behind them as the perpetrator may be dangerous when it's time to make an arrest. Officers asked Obiagwu for a description of the perpetrator which they claimed is needed to make an arrest. Obiagwu pulled out his phone and showed officers a close up detailed picture of the perpetrator and instantly their facial expressions changed like they saw a ghost. The officers quickly got in a hurdle to discuss and after told Obiagwu that "…unfortunately, no crime was committed, it's a public place…everyone can record in public place" right after they discovered it was one of their officers.

57. Obiagwu insisted that he wants to make a complaint anyway even if they won't make an arrest anymore and Obiagwu was pressured and discouraged from making a complaint as the officers said "it's pointless to make a complaint….. it won't go anywhere…. there was no crime… all you can do is take your belongings you left behind and you don't have to worry about it." Obiagwu insisted that he wants to make a complaint anyway just to be on the safe side and he was denied and told to leave.

58. **On or about the first week of February** Obiagwu was in penn station approximately 12-1am when he was arrested simply for sitting on a stairs as he waited to catch the last train of the night. The unidentified officers claimed he was "blocking traffic" even though he was sitting on the bottom side of a 3-way twenty feet wide stairwell that was out of use for the night with a gate at the top of the stairs which was shut. Officers made all nonsensical claims of "what ifs" to justify that it is a problem for Obiagwu to wait there.

59. Obiagwu informed the officers that his train is in about 5 minutes when asked if he needed an officer to get a wheelchair for him furthermore stating that it would be unnecessary to wait

about 10 minutes for the officers to retrieve a chair from the command and bring it back when his train would be long gone by then. Obiagwu thanked the officers for their willingness to provide a wheelchair but stated he is already close enough to the entrance of the platform where his train will arrive. The officers asked Obiagwu again if he needed a wheelchair in which he declined and as a direct response he was placed under arrest for taking their "help." He was taken to jail, stripped searched, kept in the cell for hours before being taken to manhattan central booking and maliciously charged with possession of legal self-defense weapons.

60. Prior to charging Obiagwu the officers displayed the knife to Obiagwu in the cell in which he informed them it was legal and met New York law requirements, the officers admitted it was legal but still intentionally wrongfully charged him.

61. All videos relating to the arrest which were recorded on multiple devices of Obiagwu were vanished after the arrest.

62. **On February 21, 2025** approximately 2am officers Culver, Ragione, Decker and Captain Proposnoy approached Obiagwu in penn station while he was waiting for late night train after work and demanded that he cannot sit on his own rolling tool box while waiting for the train.

63. Captain Proposnoy claimed that it is unlawful for him to not stand while waiting for the train.

64. Officer Culver exclaimed that he remembers Obiagwu and asks "what happened to your case last week?" And Obiagwu responds "dismissed" and Culver begins to scratch his head in disappointment and informs Ragione that he will be back with Obiagwu's credential as he went into the command briefly.

65. Captain Proposnoy claimed Obiagwu was "blocking" and later changed his accusation to "sitting on the floor" and informs Obiagwu that he will be arrested if he doesn't stand up from his own Box.

66. Video proof will show that the train waiting room was closed due to construction so no seats were available in the station.

67. Ragione claimed that Obiagwu squatting in the air is okay but the exact same position with his toolbox underneath his butt is equals to "sitting on the floor" because the box is on the floor just like any other luggage is supposed to be. By this logic all chairs or benches making contact with the floor would mean such person is also sitting on the floor.

68. Culver returned and gave Ragione Obiagwu's credentials to issue a ticket.

69. Culver informs Decker that Obiagwu is the person "i was talking to you about…from the other night, that was sitting down.." as he admits that he tells all his fellow officers about Obiagwu which leads to Obiagwu being targeted every time he commutes through penn station.

70. Obiagwu argued that for medical reasons he had to sit but Captain Proposnoy and culver claimed that Obiagwu "can stand" so he must not have a disability because he can't see it.

71. Captain Proposnoy directs Obiagwu to leave the station or he will be arrested for trespassing and under threat of arrest Obiagwu left.

72. While heading outside Obiagwu asked Captain Proposnoy why he isn't enforcing the same rules for everybody and he responds "one at a time… after you leave" but he never enforced the same rules for everybody as Obiagwu recorded videos of 5 white people sitting on their luggages and some sitting on the floor who were not confronted.

73. From outside, after being ejected and issued a ticket, Obiagwu started recording into the facility and saw no one else was told to stand up from the floor or their suitcase.

74. On one video a sergeant can be seeing telling a black guy to get up from sitting on an unused stairs but to his right a white lady sits on the floor against a pillar. This white lady was directly in front of the police command with numerous officers walking past her saying nothing! She sat there from 3am till 3:46am and left when she was ready without ever having to deal with cops. Obiagwu sat on his box (not even the floor) for less than 2 mins before being approached and threatened with arrest.

75. **On March 16,2025** at approximately 3:10Am Obiagwu was on the train at World Trade Center heading uptown which was the only train in the station and about to depart when officer Ryan walked into the train car and order Obiagwu to get out for no reasonable suspension but simply because he stated Obiagwu needed to step off the train onto the platform and step back into the train for absolutely

no reason but to inconvenience Obiagwu at such late graveyard hours. Note that the trains were not being cleaned, serviced, inspected nor out of service. Ryan simply just wanted to flex his authorities.

76. Obiagwu ignored Ryan's commands as he saw other passengers getting on the train with no officer disturbing them. Ryan feeling his authority wasn't respected refused to leave it alone or de-escalate instead proceeded to walk over 200ft down the platform to bring over 5 backup armed officers who could be helping or providing resources to those in need or fighting crimes. By the time backup arrived it was time for the train to depart but the officers held the train delaying it just to make sure that Obiagwu must bow to useless orders before he is free to go. About 5 fully armed officers: Smahaj, Ajbury, sargeant Gardowski/Cardowski and Platt decided to all grab Obiagwu at every limb and each pulling in different directions.

77. Before going hands on the officers refused to try any de-escalation technique or translation app to figure out if Obiagwu even understands what is being said or the mental state of Obiagwu as Obiagwu never uttered a word or responded to orders.

78. Obiagwu held on to the railing attached to the seat when 2 officers pulled his right arm and right legs through the railing small opening forcing his body clash against the railing as they bent his arm and leg in unnatural positions to inflict pain as 2-3 other officers pulled his left arm and leg in the opposite direction with full force  while his right limbs are bent and stuck on the other side of the railings as a hook making it impossible for his body to move in either direction as he was pulled from both sides

79. While his right limbs were still through the small openings in the railing, his entire body was dragged off the seat and pulled away to the left as his right arm was twisted and being hit. Officers kicked Obiagwu and struck him multiple times to make him let go of the railing but he couldn't as he was dragged in opposite direction and shoulder twisted to inflict extreme pain.

80. Obiagwu was finally dragged through the train floors and dropped on the dirty platform floors and let go off without any ticket, summons or arrest. He was beaten and dragged off the train just for their satisfaction. At this point he was now free to get back on the train seconds after being forcibly dragged off  as they tried picking him up from the ground but he was unable to stand on his own.

81. Officers turned on their bodycams  AFTER using force and throwing him on to the ground. When Ryan went to bring backup they were aware they were about to encounter a civilian and had ample time to activate bodycams but didn't as they violated the MTAPD BWC policy.

82. Obiagwu was injured and had to be taken to the hospital with an ambulance. Obiagwu wasn't charged with any violation or issued a ticket except for a beating and humiliation.

83. On april 6 approximately 11:30 Am Obiagwu went to the MTAPD police command located in penn station to make a complaint regarding his assault on the train. Upon arriving he spoke to lieutenant Martinez (Shield #92). Martinez tried every trick, wordplay and excuse to dismiss or not have to take Obiagwu's complaint by trying to push the complaint towards NYPD officers instead of his officers. Martinez seemed disinterested in taking the complaint but eagerly wanted to discover who Obiagwu was for trying to make a complaint on officers.

84. Lt. Martinez lied of knowing of the names being reported except for one which is unlikely as a supervisor.

85. After making a complaint Obiagwu left and noticed he was being followed after making a complaint. Obiagwu approached the two officers who denied following him, Obiagwu turned around and made two right turns then goes over 150ft in the exact opposite direction and the officers followed him until he turned back again, went back up the stairs which they followed him again. Upon numerous sides trying to loose the officers following him Obiagwu discovered there were additional 2 officers following him from a distance while the other 2 officers followed closely. Obiagwu requested they turned on their bodycam which they refused and continued to follow him.

86. Obiagwu returned back to the police command to make another complaint on why he's being retaliated against for making a complaint. Lt.Martinez denied sending the officers after him but those officers weren't present when Obiagwu was making his initial complaint to be aware of the fact that his name and address was wanted by Martinez. It is clear that Martinez used his power to send officers after Obiagwu with the discriminatory anticipation that he would break the law and will give them opportunity to forcefully identify who he is for making a complaint.

## CLAIMS FOR RELIEF

### 42 U.S.C. § 1983 - First Amendment Violations of right to redress grievances
(Against MTA, MTAPD, individual officers and Mew York State.

87. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

88. Plaintiff was arrested solely for demanding to make a complaint against unjust treatments and excessive force

89. Plaintiff's right to redress his grievances was denied when he was prevented from making a report regarding privacy violation from undercover officer.

90. Plaintiff's religious head covering was removed and seized even after routine search procedures.

91. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

### 42 U.S.C. § 1983 - Fourth Amendment Violations Involving Unlawful Seizure & Excessive Force
92. (Against MTA, MTAPD, New York, and individual named officers)

93. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

94. Emmanuel Obiagwu was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search and seizure.

95. Defendants unreasonably seized Obiagwu, thereby depriving him of his right to be free from unreasonable seizure of his person in violation of the Fourth and Fourteenth amendments to the United States Constitution.

96. The unlawful use of excessive force to prevent Obiagwu from making a complaint.

97. The unlawful use of force and seizure to eject Obiagwu from the facility.

98. The officer's recording of Obiagwu in a place of expected privacy.

99. The unlawful use of intentional excessive force by twisting and folding Obiagwu's injured shoulder was highly unprofessional and unnecessary

100.    The arrest, search and seizure of plaintiff for not accepting unnecessary help.

101.    The use of force against Obiagwu, by inflicting harm through physical force on Obiagwu's injuries in order to control him with torture was objectively unreasonable under any circumstances.

102.    As a direct result of the conduct of Defendants described herein, Obiagwu    suffered damages including: physical injury, humiliation, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

103.    At all times, Defendants were acting under color of state law.

## 42 U.S.C. § 1983-Conspiracy to Deprive Civil Rights
### (Against MTA, MTAPD, individual officers)

104.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

105.    Defendants, acting in their individual capacities and under color of law, conspired together and with each other, and reached a mutual understanding to undertake a course of conduct that violated Obiagwu's civil rights.

106.    In furtherance of this conspiracy, Defendants committed overt acts, namely:
   a.  While acting in concert discussed among each other and placed Obiagwu under arrest after requesting to make a complaint.
   b.  Gathered outside the holding cell Obiagwu was locked in and discussed charging him with possession of 3-inch knife and pepper spray which they admitted they know is legal and stated they can lie and reclassify it as a "gravity knife." to cause Obiagwu to have to go to both criminal and ticket court instead of just ticket court known as the Transit Adjudication Bureau.

## 42 U.S.C. § 1983 - Fourteenth Amendment Violations of Due Process and equal protection
### (Against MTA, MTAPD. New York And its officers in individual capacity)

107.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

108.    Plaintiff was not provided equal protection of the law.

109.    Defendant MTAPD had policies requiring physical identification that violated the fourth amendment and NY law.

110.    Defendants acting in bad faith showed unfair treatment to Plaintiff due to his religious head covering.

111.    As a result of Defendants' actions, Plaintiff has suffered damages beyond what any amount of money can repair.

112.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the MTAPD and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983 Retaliatory arrest in violation of the First Amendment
### (Against MTA, MTAPD, NewYork, and officers in their individual capacity)

113.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

114.    Defendants made the decision to handcuff, arrest and charge Obiagwu in retaliation after Obiagwu engaged in constitutionally protected activity.

115.    Defendants assigned officers to trail and survey plaintiff in retaliation for making a complaint

116.    Defendants arrested plaintiff for refusing their help.

117.    Defendants' action to retaliate due Obiagwu addressing his grievances would chill a person of ordinary firmness from voicing or speaking up against injustice from the government.

118.    Additionally, Defendants' actions described herein have had a chilling effect on Obiagwu, who is now less likely to report unjust police activity out of fear of further unconstitutional treatment

119.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the MTAPD and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983 - Supervisory Liability
### (Against MTA, MTAPD, the State of Newyork, Bradshaw)

120.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

121.    The MTAPD supervisors including Bradshaw were aware of the incident and failed to act as they were informed but instead escalated the situation resulting in retaliatory arrest.

122.    The supervisors were acting under color of law when they ignored Obiagwu's request to make a complaint and dismissed him.

123.    The supervisors had over 3 hours to access the situation but allowed plaintiff to be maliciously charged and prolonged detainment..

124.    The supervisors knew that Obiagwu was free to go and was engaged in consensual conversation when asking for a complaint form but supervisor Bradshaw allowed Obiagwu to be arrested.

125.    The MTAPD Failure to terminate officers with a history of violence and abuse of authority.

126.    The supervisors' failure to correct subordinates' use of force and misunderstanding of New york ID laws  shows lack of leadership further violating plaintiff's rights.

127.    Supervisor's approval of 4 retaliatory charges.

128.    MTAPD has a long history and numbers of viral videos of Officers making retaliatory arrests and summonses.

129.    Captain Propisnoy and the supervisors of MTAPD penn station command further prevented the acquisition of officers' names upon request so a complaint can't be made.

130.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the State of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983: Municipal Liability
### (Against New York State, MTA and MTAPD)

131.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.    The State's Failure to train officers on first amendment rights and appropriate use of force

133.    MTA and MTAPD's Failure to train officers on first amendment rights and appropriate use of force

134.    The state's failure to train officers in legality of possession of self defense weapons.

135.    The MTAPD Failure to terminate officers with a history of violence and abuse of authority.

136.    As a direct result of the Defendant City's failures and policies as described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress; lost time; loss of employment opportunity; and loss of faith in society., including mental anguish, physical harm, pain, and suffering.

## 5 U.S.C. § 552: Freedom of Information Act
### (Against MTA, MTAPD, New York)

137.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

138.    Defendants repeatedly postponed release of documents with intention to never release footages for over 2 years and eventually stopped responding.

139.    Defendants refused to release requested names of officers involved in plaintiff's arrests.

140.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the State of NY and their acts or omissions were conducted within the scope of their official duties or employment.


**NY State law: intentional use of force.**

**(Against Tapia, Galligan, Moretti, Ryan, Ajbury, Smahaj, Gardowski, MTA, MTAPD)**

141.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

142.    Defendants committed acts that rose to the level of extreme or outrageous conduct that goes beyond the possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community.

143.    Defendants' actions were intentionally reckless.

144.    Such actions by Defendants have caused Mr. Obiagwu severe emotional distress.

145.    Defendants' sole motivation was to cause pain and emotional distress to Plaintiff in retaliation for disregarding their unlawful orders.

146.    As a direct result of the conduct of Defendants described herein, Mr. Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety, fear, apprehension, depression, anxiety, consternation and emotional distress; In addition loss of faith in society.

147.    Further, Mr. Obiagwu was reasonably in fear for his own person because of the actions of Defendants

148.    Defendants had information that plaintiff was injured when they proceeded to twist his injury and inflict pain.

149.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the state of New York and their acts or omissions were conducted within the scope of their official duties or employment.

## NY state law: Assault and battery.
### (Against Ryan, Gardowski, smahaj, Ajbury, Tapia, MTAPD)

150.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

151.    During the process of being unconstitutionally arrested, Obiagwu suffered assault and battery at the hands of Defendants.

152.    Defendants kicked and punched Obiagwu.

153.    Defendants dragged Obiagwu through the floor and pushed him down the stairs without probable cause

154.    Defendants committed battery by punching and hitting Plantiff to comply with unlawful orders

155.    As a direct result of all the conduct of defendant's action, Obiagwu was taken to the hospital and suffered shoulder, arm and  leg injuries, fractured finger and temporal inability to walk.

156.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the state of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## NY law; FOIL LAW
### (Against MTA, MTAPD and State)

157.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

158.    Defendants refused to release names of officers upon multiple requests

159.    Defendants refused on multiple occasions to release  requested documents including multiple body worn camera footages

160.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the state of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY law; false imprisonment and false arrest**

<u>(Against all defendants)</u>

161.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

162.    Defendants acting in bad faith arrested Obiagwu on 3 different occasions.

163.    Defendants arrested Obiagwu and charged him with charges that can't be proven.

164.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the state of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY law; false report**

<u>(Against MTAPD, MTAPD officers)</u>

165.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

166.    Officers lied on official report claiming Obiagwu said he was not taking the train when he clearly asserted that he was waiting for a different train while waiting on the platform.

167.    Defendants claimed that plaintiff had an illegal weapon which he/she should've known is legal.

168.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the state of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## **PRAYER FOR RELIEF**

1.Judgment for compensatory damages; including damages for emotional

distress, humiliation, loss of enjoyment of life,defamation and other pain and suffering

on all claims allowed by law in an amount into be determine by a jury;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against all individual Defendants;

F. pre- and post-judgment interest at the lawful rate; and,

2. Judgment for exemplary or punitive damages;

3. Cost of suit; attorneys' fees and the costs associated with this action under 42 U.S.C. §

1988, including expert witness fees, on all claims allowed by law;

4. Monetary rewards for missed work opportunity

5. Any further relief that this court deems just and proper, and any other appropriate relief allowed by law and equity.

6. Wherefore Plaintiff prays for judgment against all defendants combined in an amount no less than $300,000

7. Plaintiffs prays that this court impanel a lawful jury to hear this case.

## **PUNITIVE DAMAGE**

The actions of Defendants as described above were carried out in bad faith and with malice, and done with intent to cause injury. Punitive damages should be awarded to punish Defendants and to deter them, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

Submitted by;

/s/ Emmanuel Obiagwu.
908-708-4090
EmmanuelObiagwu@gmail.com

    Emmanuel.O
_____

Sep 13, 2025